**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen (LR 5733)
Phillip Kim (PK 9384)
Yu Shi (YS 2182)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: info@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD RUPP and RODRIGO LEAL, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>        v.<br><br>MOMO INC., YAN TANG, and JONATHAN XIAOSONG ZHANG<br><br>    Defendants. | Case No. 1:19-cv-04433-GBD<br><br><u>CLASS ACTION</u> |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL <u>APPROVAL OF CLASS ACTION SETTLEMENT</u>

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................... 1

II.  THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ...................................... 3

A.  The Settlement is Entitled to a Presumption of Fairness Because it is the Product of
     Arm's-Length Negotiations Among Experienced Counsel Before an Experienced
     Mediator ................................................................................................... 3

B.  The Settlement is Substantively Fair, Reasonable and Adequate Under the Grinnell
     Factors ...................................................................................................... 5

     1.  Continued Litigation Would be Complex, Expensive, and Protracted ...................... 6

     2.  The Lack of Objections or Opt-Outs Support Final Approval ................................. 9

     3.  Plaintiffs had Sufficient Information to Make Informed Decisions About Settling this
         Case ................................................................................................... 11

     4.  Plaintiffs Faced Risks in Establishing Liability and Damages ................................ 12

     5.  Risks of Maintaining Class Action Status Through Trial ...................................... 15

     6.  The Ability of Defendants to Withstand Greater Judgment ................................... 15

     7.  The Settlement Amount is in the Range of Reasonableness in Light of the Best
         Possible Recovery and All the Attendant Risks of Litigation .................................. 16

C.  The Settlement Satisfies the Remaining Rule 23(e)(2) Factors .................................... 18

     1.  Attorneys' Fees ...................................................................................... 18

     2.  The Parties Have No Other Agreements Aside from Opt-Outs and Disclosed Fee
         Arrangements ........................................................................................ 18

D.  The Plan of Allocation Should Be Approved ...................................................... 19

E.  Notice to the Settlement Class Satisfied all the Requirements of Rule 23 and Due Process
     ....................................................................................................................21

F.  Final Certification of the Settlement Class ........................................................ 22

III. CONCLUSION ................................................................................................... 23

i

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) ........................................................................................ 6, 21

*Baker v. SeaWorld Entm't, Inc.*,
No. 14CV2129-MMA (AGS), 2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ........................... 22

*Burns v. FalconStor Software, Inc.*,
No. 10 CV 4572 (ERK), 2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) .................................. 4

*Cagan v. Anchor Sav. Bank FSB,*
No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ................................................ 17

*Christina Asia Co., Ltd. v. Yun* Ma,
No. 1:15-md-02631 (CM)(SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .............. 13, 19

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .............................................................................. 5, 12, 16, 17

*City of Providence v. Aeropostale*,
No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ................... 6, 22

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) .................................................................................................. 4, 5

*Granada Invs., Inc. v. DWG Corp.*,
962 F.2d 1203 (6th Cir. 1992) ............................................................................................... 17

*Hayes v. Harmony Gold Min. Co.*,
509 F. App'x 21 (2d Cir. 2013) .............................................................................................. 6

*Hicks v. Stanley*,
No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ................................ 8

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ...................................................................................... 12, 22

*In re Agent Orange Prod. Liab. Litig.*,
611 F. Supp. 1396 (E.D.N.Y. 1985) ...................................................................................... 17

*In re Alloy, Inc. Sec. Litig.*,
No. 03 CIV.1597(WHP), 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ................................... 7

*In re Am. Bank Note Holographics, Inc.*,
 127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................................... 8, 9, 20

*In re AOL Time Warner, Inc.*,
 No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................ passim

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
 909 F. Supp. 2d 259 (S.D.N.Y. 2012) .................................................................. passim

*In re Citigroup Inc. Bond Litig.*,
 296 F.R.D. 147 (S.D.N.Y. 2013) ............................................................................... 3

*In re Citigroup Inc. Sec. Litig.*,
 965 F. Supp. 2d 369 (S.D.N.Y. 2013) ........................................................................ 6

*In re Datatec Sys., Inc. Sec. Litig.*,
 No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ........................................ 20

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
 343 F. Supp. 3d 394 (S.D.N.Y. 2018) ................................................................... 3, 16

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
 No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ............................... 16

*In re Genworth Fin. Sec. Litig.*,
 210 F. Supp. 3d 837 (E.D. Va. 2016) ...................................................................... 18

*In re Glob. Crossing Sec. & ERISA Litig.*,
 225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................... 13, 14, 15, 19

*In re IMAX Sec. Litig.*,
 283 F.R.D. 178 (S.D.N.Y. 2012) ......................................................................... passim

*In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*,
 No. 13CIV214RMBRLE, 2017 WL 2559230 (S.D.N.Y. May 22, 2017) ................................... 5

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
 233 F.R.D. 306 (E.D.N.Y. 2006) ............................................................................ 20

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
 No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .................. 3, 14, 15, 19

*In re Merrill Lynch & Co., Inc. Rsch Reps. Sec. Litig.*,
 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ...................................... 10

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
 No. 94 CIV. 3996 RWS, 2000 WL 37992 (S.D.N.Y. Jan. 18, 2000) ................................... 20

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y.) ................................................................................................ 3

*In re Sony Corp. SXRD*,
   448 F. App'x 85 (2d Cir. 2011)......................................................................................... 6

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
   No. 06 CIV. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ................................. 12

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................................ 14

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................................................................ 19

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) .......................................................................... 13, 14

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012) ................................................................................ 17

*Pelzer v. Vassalle*,
   655 F. App'x 352 (6th Cir. 2016) ...................................................................................... 18

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*,
   No. 11-CV-05801 DLI VVP, 2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012) ........................... 7

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) .................................................................................. 8

*Van Oss v. New York*,
   No. 10 CIV. 7524 SAS, 2012 WL 2550959 (S.D.N.Y. July 2, 2012) ...................................... 4

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005).......................................................................................... passim

*Yang v. Focus Media Holding Ltd.*,
   No. 11 CIV. 9051 CM GWG, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ............................ 5

## Statutes

15 U.S.C. § 78u-4(a)(4) ........................................................................................................ 18

15 U.S.C. § 78u-4(a)(7) ........................................................................................................ 21

## Rules

Fed. R. Civ. P. 23............................................................................................................. passim

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Richard Rupp and Named Plaintiff Rodrigo Leal ("Plaintiffs"),[1] on behalf of themselves and the Settlement Class, respectfully submit this memorandum of law in support of their motion for final approval of the proposed Settlement resolving all claims asserted in the Action, approval of the proposed Plan of Allocation of Settlement proceeds, and certification of the Settlement Class for settlement purposes.

## I.   INTRODUCTION[2]

Subject to this Court's approval, Plaintiffs and Defendants have agreed to settle all claims in the Actions against Defendants in exchange for a cash payment of $5,000,000. This is a favorable result for the Settlement Class in light of the many risks inherent in this litigation against a China-based issuer.

The Settlement is the product of Lead Counsel's extensive investigation concerning the claims asserted in the Action and vigorous prosecution of the litigation on behalf of the Settlement Class. By the time the agreement to settle was reached, Lead Counsel had a thorough understanding of the strengths and potential weaknesses of the case, and had spent considerable time on behalf of Momo ADS holders, including conducting a wide-ranging cross-border factual investigation, retaining private investigators and experts; drafting highly detailed pleadings,

---

[1] Unless otherwise defined, all capitalized terms used herein have the meanings ascribed to them in the Stipulation of Settlement dated March 23, 2021 (the "Settlement Stipulation"). *See* ECF No. 67.

[2] The Declaration of Laurence Rosen ("Rosen Declaration" or "Rosen Decl."), filed herewith, is an integral part of this submission. For the sake of brevity, the Court is respectfully referred to it for a detailed description of, among other things: the history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and the terms of the Plan of Allocation of the Net Settlement Fund. All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and exhibits to, the Rosen Declaration.

1

opposing Defendants' motion to dismiss, and preparing for and participating in the mediation and settlement discussions overseen by a respected and experienced mediator, Jed D. Melnick, Esq., of JAMS, which included the exchange of detailed mediation statements.

While Plaintiffs and Lead Counsel believe that their claims are meritorious, they recognize the substantial challenges to establishing liability, proving damages, and achieving (and collecting upon) a greater recovery. Defendants have and will continue to contest each element of Plaintiffs' claims, and have damages and negative causation defenses that may greatly reduce, or even eliminate, any potential recovery. Moreover, discovery would have been difficult and expensive given that the vast majority of the documents and witnesses are in China. Finally, even if Plaintiffs could have succeeded at trial, there is a significant risk that they would not be able to collect, as each Defendant is based in China, and China does not recognize U.S. judgments.

The Settlement is fair, adequate, and reasonable under the governing standards in this Circuit. The $5 million Settlement falls well within the range of settlements in comparable securities fraud cases and eliminates the significant costs and risks of continuing litigation through a decision on Defendants' motion to dismiss, and if successful, through summary judgment, trial and the inevitable appeals. Additionally, as of the date of this filing, no objections to any aspect of the Settlement has been received, and there has only been one invalid exclusion request received from an individual who declined to provide the necessary information to demonstrate that he is a member of the Settlement Class.  Likewise, the proposed Plan of Allocation is eminently fair and reasonable, as it equitably allocates the Net Settlement Fund to those Settlement Class Members who submit valid claims.

For these reasons, and those set forth below, Plaintiffs respectfully submit that the Settlement and Plan of Allocation are in the best interests of the Settlement Class and merit final

approval.

## II.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

A court will approve a settlement if it is "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  Although "[t]he decision to grant or deny such approval lies squarely within the discretion of the trial court, . . . this discretion should be exercised in light of the general judicial policy favoring settlement." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Accordingly, public policy considerations strongly favor settlement, particularly in class actions. *Wal-Mart*, 396 F.3d at 116 ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'"). Furthermore, "[i]n evaluating the settlement of a securities class action, federal courts, including this [c]ourt, have long recognized that such litigation is notably difficult and notoriously uncertain." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (alterations in original); *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at \*5 (S.D.N.Y. Dec. 23, 2009) (same).

### A.    The Settlement is Entitled to a Presumption of Fairness Because it is the Product of Arm's-Length Negotiations Among Experienced Counsel Before an Experienced Mediator

Courts may apply a presumption of fairness when a class settlement is the product of "arm's-length negotiations between experienced, capable counsel." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (quoting *Wal-Mart*, 396 F.3d at 116). Because counsel are "most closely acquainted with the facts of the underlying litigation," courts give "great weight" to counsel's recommendations regarding settlement, especially when negotiations are facilitated by an experienced, third-party mediator. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*,

3

343 F. Supp. 3d 394, 408-09 (S.D.N.Y. 2018) (settlement was procedurally fair where it was "based on the suggestion by a neutral mediator"), aff'd 822 F. App'x 40 (2d Cir. 2020); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (finding that a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure"); *Van Oss v. New York*, No. 10 CIV. 7524 SAS, 2012 WL 2550959, at *1 (S.D.N.Y. July 2, 2012) ("a strong presumption of fairness attaches because the Settlement was reached by experienced counsel after extensive arm's length negotiations.").

Here, the Parties did not commence settlement negotiations until after the Parties had fully briefed Defendants' motion to dismiss. ¶20. By then, Lead Counsel had conducted an extensive cross-border investigation, including hiring private investigators to locate and interview former Momo employees and relevant third parties, and obtaining non-public filings that Momo and its subsidiaries made with Chinese regulators. Additionally, Plaintiffs consulted experts, including a damages expert in order to gain an understanding of the amount of damage potentially and realistically provable. ¶14. As part of the mediation process facilitated by Mr. Melnick, the Parties exchanged detailed and candid briefs concerning each element of Plaintiffs' claim. ¶21. Nor did the Parties' all-day mediation on November 20, 2020 result in an agreement. It was only after several more weeks of negotiations following the mediation, with the continued involvement of Mr. Melnick, that the Parties ultimately reached an agreement in principle. ¶22.

The extensive and arm's-length nature of the settlement negotiations between experienced counsel, with the involvement of an experienced mediator like Mr. Melnick, support the conclusion that the Settlement is presumptively fair, adequate, and reasonable. *Burns v. FalconStor Software, Inc.*, No. 10 CV 4572 (ERK), 2014 WL 12917621, at *4 (E.D.N.Y. Apr. 11, 2014) (citing *Wal-Mart*, 396 F.3d at 116). Indeed, "absent evidence of fraud or overreaching, [courts]

consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." The involvement of a neutral mediator provides further support that negotiations were conducted at arm's-length. *Yang v. Focus Media Holding Ltd.*, No. 11 CIV. 9051 CM GWG, 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) (noting that "[t]he participation of this highly qualified mediator [Mr. Melnick] strongly supports a finding that negotiations were conducted at arm's length and without collusion."); *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, No. 13CIV214RMBRLE, 2017 WL 2559230, at *7 (S.D.N.Y. May 22, 2017) (approving settlement where the settling parties engaged Mr. Melnick as a mediator, including an all-day mediation session with subsequent discussions and arm's-length negotiations among the parties with Mr. Melnick's involvement).

Accordingly, these facts strongly weigh in favor of affording the Settlement the presumption of fairness and granting final approval.

### B.    The Settlement is Substantively Fair, Reasonable and Adequate Under the Grinnell Factors

The Settlement is also substantively fair, adequate, and reasonable. It is well-established that "[i]n this Circuit, courts examine the fairness, adequacy, and reasonableness of a class settlement according to the *Grinnell* factors," which are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart*, 396 F.3d at 117 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)); *Deutsche*

5

*Bank*, 236 F.3d at 86.

In applying the *Grinnell* factors, a court "must give comprehensive consideration to all relevant factors," *Hayes v. Harmony Gold Min. Co.*, 509 F. App'x 21, 23 (2d Cir. 2013), but "not every factor must weigh in favor of settlement, rather [a] court should consider the totality of these factors in light of the particular circumstances." *IMAX*, 283 F.R.D. at 189. "[W]hen evaluating a settlement agreement, the court is not to substitute its judgment for that of the parties, nor is it to turn consideration of the adequacy of the settlement into a trial or a rehearsal of the trial." *In re Sony Corp. SXRD*, 448 F. App'x 85, 87 (2d Cir. 2011). As demonstrated below, the Settlement satisfies the criteria for approval under *Grinnell*.

### 1.    Continued Litigation Would be Complex, Expensive, and Protracted

In general, "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381–82 (S.D.N.Y. 2013). This is particularly true here, as "securities class actions are by their very nature complicated and district courts in this Circuit have 'long recognized' that securities class actions are 'notably difficult and notoriously uncertain' to litigate." *City of Providence v. Aeropostale*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014) (quoting *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012)), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). Indeed, while securities class actions are inherently complex and expensive to litigate, this case is particularly so because of the unique challenges associated with litigating against China-based Defendants.

Further litigation would have required substantial additional expenditures of time and resources, involving complex issues of law and fact, with a significant risk of a lower recovery.

6

*See In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("In addition to the complex issues of fact involved in this case, the legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.").

For example, in the absence of the Settlement, the Action would have required resolution of Defendants' motion to dismiss, and if Plaintiffs prevail, then extensive fact and expert discovery, a motion for class certification, summary judgment motions and *Daubert* motions, followed by trial, post-trial motions, and the inevitable appeals. Throughout each litigation phase, Plaintiffs would continue to face a robust defense from Defendants' experienced and capable counsel. *See In re Alloy, Inc. Sec. Litig.*, No. 03 CIV.1597(WHP), 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (securities fraud issues "likely to be litigated aggressively, at substantial expense to all parties").  As a result of such "notorious complexity, securities class action litigation is often resolved by settlement, which circumvents the difficulty and uncertainty inherent in long, costly trials." *AOL Time Warner*, 2006 WL 903236, at *8.

Discovery would be particularly complex here given that Momo is a China-based company whose business operations are in China, and Tang and Zhang are Chinese nationals residing in China. As such, there is no guarantee that Plaintiffs would have been able to obtain the necessary evidence to prove their case through discovery; and even if they could do so, it would be costly and significantly delay any potential recovery to Settlement Class Members. Litigation with foreign defendants and witnesses adds complications, requiring Plaintiffs to follow appropriate international conventions to retrieve documents and receive testimony. This would also require extensive translation or the retention of bilingual attorneys to facilitate document review. *See Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*, No. 11-CV-05801 DLI VVP, 2012 WL

3746220, at *7 (E.D.N.Y. Aug. 27, 2012) ("Courts in the Second Circuit have widely recognized that obtaining evidence through the Hague Convention and letters rogatory are cumbersome and inefficient, and hardly make litigation in the United States convenient").

Even if Plaintiffs could recover an equally large judgment after a trial *and* recover from Defendants – both of which are far from certain given the risks discussed herein – the additional delay through post-trial motions and the appellate process could deny the Settlement Class any recovery for years, further reducing its value. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation [.]. . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery").

Significantly, because China does not recognize U.S. judgments, even if Plaintiffs win at trial, they may not be able to collect on the judgment.  By then, Momo's Directors & Officers (D&O) insurance policy, which had been funding the defense of this Action, would almost certainly be exhausted, eliminating the most certain source of funding for any recovery. Accordingly, there is a very significant risk that further litigation might yield a smaller recovery – or no recovery at all – years in the future. *See*, *e.g.*, *Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (protracted litigation could force a company experiencing financial difficulties into bankruptcy and foreclose significant recovery for the class). The Settlement eliminates the expense and delay of continued litigation, the depletion of limited accessible

resources for settlement funds, and the risk that the Settlement Class could receive no recovery.

### 2.    The Lack of Objections or Opt-Outs Support Final Approval

The reaction of the class to a proposed settlement is a significant factor to weigh in considering its fairness and adequacy. *See Bear Stearns*, 909 F. Supp. 2d at 266-67; *see Wal-Mart*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Am. Bank Note*, 127 F. Supp. 2d at 425 (noting "the lack of objections may well evidence the fairness of the Settlement").

The absence of any objections and or valid requests for exclusion from the Settlement Class provides evidence of the Settlement Class members' overwhelming approval of the terms of the Settlement. Pursuant to the Court's order granting preliminary approval of the Settlement ("Preliminary Approval Order"; ECF No. 71), the Court-approved Claims Administrator, Strategic Claims Services ("SCS"), has caused 202,883 copies of the Postcard Notice to be mailed to potential members of the Settlement Class and nominees. *See* Declaration of Sarah Evans Concerning: (A) CAFA Notice; (B) Mailing of the Postcard Notice; (C) Publication of the Summary Notice; and (C) Report on Requests for Exclusions and Objections ("Evans Decl.") Exhibit 1 to the Rosen Decl., at ¶8. The Summary Notice was published electronically over *Globe Newswire* and in print in the *Investor's Business Daily*. *Id.* at ¶12.

The Postcard Notice (Ex. B to Evans Decl.) contains a description of the Action, the Settlement, information about Settlement Class Members' rights, and directs potential Settlement Class Members to a dedicated website for the Long Notice, which is a more extensive notice that contains detailed descriptions of the Action, the Settlement, and information about Settlement Class Members' rights to participate in the Settlement by submitting a Claim Form; to object to the Settlement, the Plan of Allocation, the motion for attorneys' fees, expenses, and award to

Plaintiffs; or to request exclusion from the Settlement Class. (Ex. D to Evans Decl.).

While the deadline for Settlement Class Members to file objections or requests for exclusion – July 8, 2021 – has not yet passed, as of the date of this filing, no objections have been received. Evans Decl. at ¶16. While the Claims Administrator received four requests for exclusion, none were valid requests from Settlement Class Members. *Id.* at ¶15. Three of the requests for exclusions (submitted by Robert Weise, Edward Subject, and William Hardwick) were from individuals who did not provide the information required to determine whether they are member of the Settlement Class, and have not responded to the Claim's Administrator's follow-up inquiry for the required information. *Id.;* Rosen Decl. at ¶24. The other request is from an individual, Lijiao Liu ("Liu"), who has no recognized losses under the Plan of Allocation because Liu purchased and sold Momo ADSs before any corrective disclosure – in other words, Momo ADSs were similarly inflated at the same of Liu's purchases *and* at the time of Liu's sales because the alleged fraud had not been revealed to the market. *Id.* Since the Settlement Class specifically excludes persons with no compensable losses,[3] Liu is not a Settlement Class Member. *Id.* Plaintiffs will address any further requests for exclusion or objections in their Reply.

The Settlement Class's favorable reaction supports approving the Settlement. *Bear Stearns*, 909 F. Supp. 2d at 267 ("Given the absence of significant exclusion or objection—the rate of exclusion is 5.1% and the rate of objection is less than 1%—this factor weighs strongly in favor of approval."); *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (finding that 34 requests for exclusion in response to the mailing of nearly 400,000 notices was a "minimal" number that "militates in favor of approving the settlement as be[ing] fair, adequate, and reasonable.").

---

[3] *See* Preliminary Approval Order (ECF No. 71) at ¶2.

10

### 3.    Plaintiffs had Sufficient Information to Make Informed Decisions About Settling this Case

The third *Grinnell* factor, which looks to the "stage of the proceedings and the amount of discovery completed," *Wal-Mart*, 396 F.3d at 117, examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' *[sic]* causes of action for purposes of settlement." *Bear Stearns*, 909 F. Supp. 2d at 267. To satisfy this factor, the Parties "need not 'have engaged in extensive discovery' as long as 'they have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the settlement.'" *AOL Time Warner*, 2006 WL 903236, at \*10; *IMAX*, 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed…however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties.").

At the time of settlement, Plaintiffs and Lead Counsel possessed a thorough understanding of the strengths and weaknesses of the claims and defenses asserted, and could make informed appraisals regarding the chances of success. Lead Counsel had conducted an extensive investigation of the claims asserted in the Action, including analyzing public filings, news articles (including those in the Chinese media), analyst reports, and other publicly available information relevant to the claims at issue, hiring private investigators to locate and interview relevant witnesses in China, and obtaining non-public filings that Momo and its relevant subsidiaries made with Chinese regulators. Lead Counsel also researched extensively the applicable law with respect to Plaintiffs' claims and potential defenses thereto in filing the Complaint, as well as responding to Defendants' motions to dismiss and preparing for the mediation. Additionally, Lead Counsel engaged experts, including an accounting expert to analyze Momo's financial disclosures and a

11

damages expert to analyze damages. ¶26.

The Parties attended a full-day mediation by Zoom on November 20, 2020, exchanging candid views about the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses. However, a settlement was not reached at the all-day mediation, and the Parties continued their arm's-length negotiations with the assistance of Mr. Melnick, eventually accepting Mr. Melnick's "mediator's proposal" to settle the Action for $5 million. ¶22.

In light of these efforts, Plaintiffs and Lead Counsel had a strong understanding of the claims and defenses asserted and the significant risks to establishing liability, damages, and collectability of a judgment in order to intelligently negotiate the Settlement. *See AOL Time Warner*, 2006 WL 903236, at *10; *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014) (where "no merits discovery occurred," counsel that had conducted their own investigation, engaged in detailed briefing, and conducted targeted due diligence discovery were "knowledgeable with respect to possible outcomes and risks in this matter and, thus, able to recommend the Settlement"); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 CIV. 5173 (RPP), 2008 WL 1956267, at *7 (S.D.N.Y. May 1, 2008) ("[a]lthough the parties did not engage in extensive formal discovery, such efforts are not required for the Settlement to be adequate, so long as the parties conducted sufficient discovery to understand their claims and negotiate settlement terms").

### 4.    Plaintiffs Faced Risks in Establishing Liability and Damages

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117. Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the

12

risks of litigation against the certainty of recovery under the proposed settlement." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004); *AOL Time Warner*, 2006 WL 903236, at *11 (same). In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002). Courts should, therefore, "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Global Crossing*, 225 F.R.D. at 459.

### a.     Risks of Establishing Liability

"The difficulty of establishing liability is a common risk of securities litigation." *AOL Time Warner*, 2006 WL 903236, at *11.   *See also Christina Asia Co., Ltd. v. Yun* Ma, No. 1:15-md-02631 (CM)(SDA), 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019).  Defendants' motion to dismiss was pending at the time that the Parties agreed to the Settlement. Without a settlement, the Plaintiffs face the very real risk that Defendants might prevail on their motion to dismiss, as Defendants advanced colorable arguments contesting falsity, scienter, and loss causation.  The Settlement avoids the risk that Plaintiffs' Complaint may be dismissed, leaving Plaintiffs with nothing.

Even if the Plaintiffs defeat Defendants' motion to dismiss, Plaintiffs face significant obstacles obtaining the necessary evidence to prove their case at summary judgment and trial, given that most of the relevant documents and witnesses are in China, where it is notorious difficult for foreign litigants to obtain discovery.  ¶28.

### b.     Risks of Establishing Damages

If the litigation had proceeded, Defendants would present loss causation and damages defenses, which may have found favor with the Court at summary judgment or the jury at trial. Defendants have argued and would continue to argue that, based on the  timing of certain

13

disclosures and Momo's share price movement during the PSLRA's 90-day "lookback" period, damages here, if any, are mere fractions of what Plaintiffs claim. ¶38.

As in other complex securities cases, the parties here would rely on expert testimony to assist the jury in determining damages. *Global Crossing*, 225 F.R.D. at 459 ("[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury."). While Plaintiffs would argue that they are entitled to maximum damages resulting from every stock drop as alleged in the Complaint, Defendants would proffer their own expert to offer contrary testimony with respect to all of the price declines. *See IMAX*, 283 F.R.D. at 193 ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts."). In such a "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found" by the jury. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579–80 (S.D.N.Y. 2008).

Therefore, even if liability was established at trial, "a jury could find that damages were only a fraction of the amount that plaintiffs contend" because "[a] jury could be swayed by experts for the Defendants, who would minimize the amount of Plaintiffs' losses." *Del Global*, 186 F. Supp. 2d at 365. If a jury accepted Defendants' arguments, damages in this case could be greatly reduced, if not entirely eliminated. *Marsh & McLennan*, 2009 WL 5178546, at *6 ("[i]f there is anything in the world that is uncertain when a case like [a securities class action] is taken to trial, it is what the jury will come up with as a number for damages."). As a result, "the risks faced by the securities plaintiffs in establishing damages are substantial, and this factor favors approving the settlement." *Global Crossing*, 225 F.R.D. at 459.

14

**5.      Risks of Maintaining Class Action Status Through Trial**

Although class certification was not briefed in this case, such motions bear significant risk and are expensive as they require expert testimony. Defendants would undoubtedly vigorously challenge class certification, and such disputes "could well devolve into yet another battle of the experts." *Bear Stearns*, 909 F. Supp. 2d at 268. Indeed, Plaintiffs would need to retain an economics expert to opine that Momo ADSs traded on an efficient market, and that there was a common methodology to calculate class-wide damages. Defendants would most certainly engage an expert to contest Plaintiffs' expert. Even if a class were to be certified, Defendants could move to decertify the class at any time. *See* Fed. R. Civ. P. 23(c)(2); *Global Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage.").

Accordingly, "the uncertainty surrounding class certification supports approval of the Settlement," *Marsh & McLennan*, 2009 WL 5178546, at *6, because "even the process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement." *AOL Time Warner*, 2006 WL 903236, at *12.

**6.      The Ability of Defendants to Withstand Greater Judgment**

Momo is based in China, and its assets are primarily in China. Tang and Zhang are Chinese nationals. Judgments obtained in the United States are not enforceable in China. Even if Plaintiffs obtained a judgment against Defendants, there is a substantial risk that Plaintiffs would be unable to collect any of the judgment. While Momo D&O insurance is financing the defense of the lawsuit, the amount of Momo's available insurance would almost certainly be depleted if the case were to proceed, eliminating the single most certain source for Plaintiffs to obtain a monetary

recovery. Without a settlement, there exists the real possibility that Plaintiffs would spend years litigating the case to a verdict, and recover nothing because the D&O insurance policy was exhausted by defense costs.

**7.     The Settlement Amount is in the Range of Reasonableness in Light of the Best Possible Recovery and All the Attendant Risks of Litigation**

Courts typically analyze the last two *Grinnell* factors together. *See Grinnell*, 495 F.2d at 463. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010) (quoting *Grinnell*, 495 F.2d at 462). A court's "determination of whether a given settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized sum." *Bear Stearns*, 909 F. Supp. 2d at 269. Instead, the Second Circuit has held "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119.

Here, under the best-case scenario – assuming Plaintiffs overcome all the obstacles noted above and win at trial, and Defendants do not prevail on any of their arguments – Plaintiffs' ***maximum*** damages potentially recoverable are $490 million. Should any of Defendants' arguments on liability or damages be successful, however, recoverable damages would have been substantially reduced, if not altogether eliminated. *See Facebook,* 343 F. Supp. 3d at 414 ("Because Plaintiffs face serious challenges to establishing liability, consideration of Plaintiffs' best possible recovery must be accompanied by the risk of non-recovery.") The Settlement, in the amount of $5 million, represents 1.02% of the Settlement Class's best-case, maximum recoverable

16

damages. In light of the substantial risk that Plaintiffs might recover nothing absent a Settlement, this Settlement is within the range of reasonable. *Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (granting final approval which amounted to 2% of potential recovery); *Cagan v. Anchor Sav. Bank FSB,* No. 88 Civ. 3024, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (granting final approval which amounted to approximately 1.9% of best possible recovery).

In a factually and legally complex securities class action lawsuit such as this, responsible counsel cannot be certain that they will be able to obtain – and particularly here, enforce – a judgment at or near the full amount of the class-wide damages that they would propose. Thus, the possibility that a class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992). Courts recognize that "much of the value of a settlement lies in the ability to make funds available promptly." *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985). Money in Settlement Class Members' pockets now is more valuable than a speculative recovery that Settlement Class Members might obtain after years of litigation, especially when that theoretical recovery comes with the substantial risk that the Settlement Class may end up with nothing given the challenges that Plaintiffs face in establishing liability and damages. Indeed, Plaintiffs agreed to the Settlement with a full and candid understanding of the strengths and weaknesses of the case.

For the foregoing reasons, Plaintiffs submit that the proposed Settlement is both procedurally and substantively fair, reasonable and adequate, and in the Settlement Class's best

interests.

### C.    The Settlement Satisfies the Remaining Rule 23(e)(2) Factors

#### 1.    Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As discussed in the memorandum of law in support of the motion for an award of attorneys' fees, expenses, and award to Plaintiffs, filed concurrently herewith, Lead Counsel seek an award of attorneys' fees of one-third of the Settlement and payment for litigation charges and expenses. These requests, fully disclosed in the Notice, are in line with other settlements approved in the Second Circuit.

In addition, Lead Counsel requests that any award of fees and expenses be paid at the time the Court makes its award. *See In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 846 (E.D. Va. 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order."). Indeed, such "provisions are common." *Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016).

Plaintiffs also request $15,000 in total (comprised of $10,000 to Lead Plaintiff Richard Rupp and $5,000 to Named Plaintiff Rodrigo Leal) pursuant to 15 U.S.C. § 78u-4(a)(4) in connection with their efforts in stewarding the Action.

#### 2.    The Parties Have No Other Agreements Aside from Opt-Outs and Disclosed Fee Arrangements

Pursuant to Rule 23(e)(2)(C)(iv), as disclosed in the Settlement Stipulation (¶2.12), and in Plaintiffs' Preliminary Approval brief (ECF No. 69 at p. 18), the Parties have entered into a standard supplemental agreement which provides that if Settlement Class Members opt out of the Settlement such that the number of shares of Momo ADSs represented by such opt outs equals or exceeds a certain amount, Defendants have the option to terminate the Settlement. As is standard

18

practice in securities class actions, while the supplemental agreement is identified in the Settlement Stipulation, the terms were confidential to avoid creating incentives for a small group of investors to opt out solely to leverage the threshold to exact an individual settlement. This agreement has no bearing on the fairness of the Settlement, and as such, this factor weighs in favor of final approval. *See Christine Asia*, 2019 WL 5257534, at *15 (stating that opt-out agreements are "standard in securities class action settlements and ha[ve] no negative impact on the fairness of the Settlement").

### D. The Plan of Allocation Should Be Approved

In addition to seeking approval of the Settlement, Plaintiffs request that the Court approve the proposed Plan of Allocation of Settlement proceeds. The standard for approval of the Plan of Allocation is the same as the standard for approving the Settlement as a whole: namely, "'it must be fair and adequate'" *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). "When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *IMAX*, 283 F.R.D. at 192; *see also Christine Asia,* 2019 WL 5257534, at 15-16. In designing a fair and rational plan, counsel may take into account "the relative strength and values of different categories of claims." *Global Crossing*, 225 F.R.D. at 462; *see also Marsh & McLennan*, 2009 WL 5178546, at *13 ("In determining whether a plan of allocation is fair, courts look largely to the opinion of counsel.").

The proposed Plan of Allocation ("Plan") is set forth in the Long Notice. *See* Evans Decl., at Ex. D at pp. 4-6. Lead Counsel developed the Plan with the assistance of a damages expert to equitably distribute the Net Settlement Fund. Each eligible Settlement Class Member who or which submits a valid Proof of Claim form, including Plaintiffs, will receive a *pro rata* distribution pursuant to the Plan. Plaintiffs, just like all other Settlement Class Members, will be subject to the same formulas for distribution. Under the Plan, a "Recognized Loss" will be calculated for each

purchase of Momo ADSs during the Settlement Class Period for which adequate documentation is provided. The calculation of Recognized Loss is explained in detail in the Notice and incorporates several factors, including when and for what price the Momo ADSs were purchased and sold, and the estimated artificial inflation in the Momo ADSs' respective prices at the time of purchase and sale. The Plan also takes into account the relative strengths of the theories alleged in the Complaint. *See In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007) ("plans that allocate money depending on the timing of purchases and sales of the securities at issue are common"); *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 317 (E.D.N.Y. 2006) (approving plan of allocation as fair and reasonable where it treated class members equally and on a *pro rata* basis and comported with the plaintiffs' theory of damages). The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their total Recognized Loss.

Lead Counsel believe that the proposed Plan provides a fair and reasonable method to allocate the Net Settlement Fund equitably among Settlement Class Members who suffered losses as result Defendants' alleged misconduct. Their opinion as to allocation is entitled to "considerable weight" by the Court in deciding whether to approve the plan. *Am. Bank Note*, 127 F. Supp. 2d at 430. As of the date of this filing, no objections to the Plan have been received, suggesting that the Settlement Class also finds the Plan to be fair and reasonable. ¶24; *In re Nasdaq Mkt.-Makers Antitrust Litig.*, No. 94 CIV. 3996 RWS, 2000 WL 37992, at *2 (S.D.N.Y. Jan. 18, 2000) (holding that the "small number of objections to the Proposed Plan" was entitled to "substantial weight" in approving the plan).

For each of the forgoing reasons, Plaintiffs respectfully submit that the proposed Plan is fair and reasonable, and merits final approval from the Court.

**E.      Notice to the Settlement Class Satisfied all the Requirements of Rule 23 and Due Process**

"The adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Pierson*, 607 F. App'x at 73. The Notice satisfied Fed. R. Civ. P. 23(e)(1), which requires that notice of a settlement be "reasonable" – *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Pierson*, 607 F. App'x at 73-74. The Notice also satisfies both Fed. R. Civ. P. 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" and Fed. R. Civ. P. 23(e)(2)(C)(ii).

Both the substance of the Notice and the method of dissemination to potential members of the Settlement Class satisfies these standards. The Notice program was carried out by SCS, a nationally-recognized claims administrator. The Long Notice contains the information required by Fed. R. Civ. P. 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7), including: (i) an explanation of the nature of the Action and claims asserted; (ii) the definition of the Settlement Class; (iii) a description of the key terms of the Settlement, including the consideration amount and the releases to be given; (iv) the Plan of Allocation; (v) the Settling Parties' reasons for proposing the Settlement; (vi) a description of the attorneys' fees and expenses that will be sought; (vii) an explanation of Settlement Class Members' right to request exclusion from the Settlement Class and to object to the Settlement, the Plan of Allocation of or the requested attorneys' fees or expenses; and (viii) notice of the binding effect of a judgment on Settlement Class Members. The Notice also provides: instructions for submitting a Claim Form in order to be eligible to receive a distribution from the Net Settlement Fund and relevant deadlines; and the contact information for Lead Counsel and SCS.

21

SCS has mailed a total of 202,883 Postcard Notices which contains a description of the Action, the Settlement, information about Settlement Class Members' rights, and directs Settlement Class Members to a website for the Long Notice. Evans Decl. at ¶8. SCS also caused the Summary Notice to be published electronically once on the *GlobeNewswire* and in print once in the *Investor's Business Daily* on April 26, 2021. *Id.* at ¶12. SCS also established a settlement-specific website to provide members of the Settlement Class with information concerning the Settlement, all applicable deadlines, and copies of key documents including the Long Notice containing the Plan, Preliminary Approval Order, the Claim Form and the Settlement Stipulation. *Id.* at ¶14. The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation.

The mailing of Postcard Notices to Settlement Class Members who could be identified with reasonable effort, supplemented with notice in a widely-circulated publication and over a newswire, and a dedicated website, was "the best notice ... practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g., In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014) ("The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts."); *Baker v. SeaWorld Entm't, Inc.,* No. 14CV2129-MMA (AGS), 2020 WL 818893, at *2-*3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar notice program including website); *City of Providence*, 2014 WL 1883494, at *2. Thus, the Notice procedures carried out here were more than sufficient.

### F.    Final Certification of the Settlement Class

In its Preliminary Approval Order, the Court found, "preliminarily and for purposes of this Settlement only, that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied". ECF No. 71, at ¶3 (finding that each of the six

factors of Rule 23(a) and (b)(3) had been satisfied). Nothing has changed with respect to these elements since the Court entered the Preliminary Approval Order. Thus, for the reasons stated in Plaintiffs' Preliminary Approval Brief (ECF No. 69), Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

## III.    CONCLUSION

For all the forgoing reasons, Plaintiffs respectfully request that the Court grant their motion for final approval of the Settlement.

Dated:  July 1, 2021                                          Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Laurence Rosen*
Laurence Rosen (LR 5733)
Phillip Kim (PK 9384)
Yu Shi (YS 2182)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827

*Lead Counsel for Plaintiffs*
*and the Class*

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 1, 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


*/s/ Laurence Rosen*
Laurence Rosen