**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen (LR 5733)
Phillip Kim (PK 9384)
Yu Shi (YS 2182)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: info@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RICHARD RUPP and RODRIGO LEAL, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>MOMO INC., YAN TANG, and JONATHAN XIAOSONG ZHANG<br><br>Defendants. | Case No. 1:19-cv-04433-GBD<br><br>CLASS ACTION |

**DECLARATION OF LAURENCE ROSEN**

I, Laurence Rosen, declare under penalty of perjury that the following is true and correct to the best of my knowledge.[1]

1.    I am an attorney duly licensed to practice law in New York and before this Court. I am the Managing Partner at The Rosen Law Firm, P.A. ("Rosen Law"), Lead Counsel for Lead Plaintiff Richard Rupp and Named Plaintiff Rodrigo Leal ("Plaintiffs") and the Settlement Class

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement dated March 23, 2021 (ECF No. 67).

in this litigation ("Action"). I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

2.    I submit this Declaration in support of Plaintiffs' Motions, filed concurrently herewith, for: (1) Final Approval of Proposed Class Action Settlement; and (2) Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiffs. The purpose of this Declaration is to set forth the nature of the investigation, litigation and negotiations that led to the settlement with Defendants Momo Inc. ("Momo"), Yan Tang ("Tang"), and Jonathan Xiaosong Zhang ("Zhang") (collectively, "Defendants", and with Plaintiffs, the "Parties"). This Declaration attempts to demonstrate why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why Lead Counsel's requests for attorneys' fees and expenses and award to Plaintiffs are reasonable and should be approved by the Court.

3.    The Settlement provides for a cash payment by or on behalf of Defendants in the amount of $5,000,000 in exchange for full releases of Plaintiffs' claims, and completely resolves the Action.

4.    After Plaintiffs moved for preliminary approval of the Settlement on March 24, 2021, the Court entered an order preliminarily approving the Settlement, preliminarily certifying the Settlement Class for the purposes of settlement, and approving the form and manner of providing notice to potential Settlement Class Members (the "Preliminary Approval Order"). ECF No. 71.

5.    Plaintiffs now seek final approval of the Settlement, as well as an award of attorneys' fees to Lead Counsel of 33⅓% (*i.e.* one-third) of the Settlement Fund (or $1,666,666.67), and reimbursement of counsel's out-of-pocket litigation expenses incurred in

prosecuting this Action in the amount of $48,049.04, and a service award to Plaintiffs totaling $15,000.

6. Attached hereto as Exhibit 1 is a true and correct copy of the Declaration of Sarah Evans Concerning: (A) CAFA Notice; (B) Mailing of the Postcard Notice; (C) Publication of the Summary Notice; and (C) Report on Requests for Exclusions and Objections ("Evans Decl.")

7. Attached hereto as Exhibit 2 is a true and correct copy of the Declaration of Laurence Rosen on behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Rosen Fee Decl.").

8. Attached hereto as Exhibit 3 is a true and correct copy of the Declaration of Richard Rupp ("Rupp Decl.").

9. Attached hereto as Exhibit 4 is a true and correct copy of the Declaration of Rodrigo Leal ("Leal Decl.").

10. Attached hereto as Exhibit 5 is a true and correct copy of the firm resume of The Rosen Law Firm, P.A. ("Rosen Law Firm Resume")

11. Attached as Exhibit 6 is a true and correct copy of peer firm billing rates ("Peer Firms Billing Rates").

**Procedural History**

12. This Action commenced on May 15, 2019 with the filing of a putative class action complaint in this Court asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 against Defendants. ECF No. 1.

13. On July 15, 2019, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Richard Rupp moved to be appointed Lead Plaintiff. ECF No. 14. The Court granted

3

his motion on September 18, 2019, appointing Rupp as Lead Plaintiff and approving his selection of The Rosen Law Firm as Lead Counsel. ECF No. 31.

14.     Upon his appointment, Lead Plaintiff, through counsel, further investigated the claims in this action by, among other things, searching for and conducting an extensive review of relevant Chinese news articles concerning Momo, retaining and overseeing a private investigator in China to locate and interview former Momo employees and relevant third-party witnesses, consulting with an accounting expert to analyze Momo's financial disclosures at issue, engaging a damages expert to analyze damages. Lead Plaintiff, joined by Named Plaintiff Rodrigo Leal, pled the facts learned in the investigation in the Amended Class Action Complaint ("Complaint"), ECF No. 35.

15.      Momo moved to dismiss the Complaint on January 24, 2020. ECF No. 39. Plaintiffs filed their opposition on March 23, 2020. ECF No. 43. Momo filed its reply brief on April 22, 2020. ECF No. 45.

16.     On May 28, 2020, Tang and Zhang joined in Momo's motion to dismiss.  ECF No. 56. Plaintiffs filed a response to Tang and Zhang's joinder on June 10, 2020. ECF No. 58.

17.     On August 3, 2020, at the Parties' request, the Court adjourned the schedule hearing on Defendants' motion to dismiss so that the Parties could explore settlement negotiations and private mediation.  ECF No. 60.

**Nature of the Allegations in the Complaint**

18.     Momo is a Chinese social media company that operates several mobile-based social and entertainment apps. The Complaint alleges two theories of liability. First, the Complaint alleges that Momo failed to disclose related-party transactions with a third-party talent agency, Beijing Mushang, that finds and manages Momo's performers (the "Undisclosed Related Party

Transactions Claim"). Second, the Complaint alleges that Momo misrepresented its content moderation efforts and capabilities as sophisticated and robust when they were actually completely ineffective, and Momo was in fact turning a blind eye to illegal content posted on its apps (the "Content Moderation Claim").

19.    According to the Complaint, the price of Momo's American Depositary Shares ("ADSs" or "shares") plummeted when a research firm, Prescient Point, published a report exposing Beijing Mushang as a related party, and again when the Chinese government punished Momo for allowing pornography and prostitution on its apps, damaging Momo investors.

**Settlement Negotiations and Terms**

20.    While Defendants' motion to dismiss was fully briefed and pending oral argument, the Parties began exploring the possibility of a settlement. On November 20, 2020, the Parties attended a full-day mediation session via Zoom with Jed Melnick, Esq. of JAMS, a nationally-recognized mediator with substantial experience mediating securities fraud class actions.

21.    In advance of the mediation, the Parties separately provided Mr. Melnick with confidential mediation statements setting forth their positions on the issues of liability, scienter, loss causation, and damages.

22.    Despite a full day of arm's-length and frank negotiations, the Parties did not reach any agreement. However, the Settling Parties continued their settlement discussions over the following weeks with the assistance of Mr. Melnick, ultimately agreeing to Mr. Melnick's "mediator's proposal" to settle the Action for $5,000,000. The Parties signed a memorandum of understanding on December 7, 2020, memorializing the key terms of their Settlement.

23.    The Settlement provides for a cash payment of $5,000,000 to pay the Settlement Class's claims. If the Court grants final approval of the Settlement, Plaintiffs, on behalf of the

Settlement Class Members, will forever release their claims against Defendants that were alleged or could have been alleged in this Action.

24.     Requests for exclusion and objections to the Settlement must be received by July 8, 2021. To date, neither the Claims Administrator nor Lead Counsel has received any objections to any aspect of the Settlement. *See* Ex. 1, Evans Decl. at ¶16. There have been four invalid requests for exclusion. *Id.,* at ¶15. Three of the requests for exclusions (submitted by Robert Weise, Edward Subject, and William Hardwick) are from individuals who did not provide the information required to determine whether they are member of the Settlement Class, and have not responded to the Claim's Administrator's follow-up inquiry for the required information. *Id.* The other request is from an individual (Lijiao Liu) who has no recognized losses under the Plan of Allocation because Liu purchased and sold Momo ADSs before any alleged corrective disclosure – in other words, Momo ADSs were similarly inflated at the time of Liu's purchases ***and*** at time of Liu's sales because the alleged fraud had not been revealed to the market. Since the Settlement Class specifically excludes individuals with no compensable losses,[2] Liu is not a Settlement Class Member. Accordingly, to date there have been no valid requests for exclusion from Settlement Class Members.

25.     The Notice of Pendency and Proposed Settlement of Class Action ("Long Notice") describes the Plan of Allocation. Ex. 1, Evans Decl. at Ex. D (Long Notice) at pp. 4-6. Lead Counsel formulated the Plan of Allocation with the help of a financial consultant to distribute the Settlement Fund fairly and reasonably to Settlement Class Members consistent with the federal securities laws and the principles of loss causation. To that end, the Plan of Allocation does not compensate losses resulting from "in and out" transactions, *i.e.*, losses from sales made prior to

---

[2] *See* Preliminary Approval Order (ECF No. 71), at ¶2.

the alleged revelation of the truth. The Plan of Allocation also takes into account the relative strengths of the theories alleged in the Complaint. The Plan of Allocation then establishes a formula which determines authorized claimants' recognized losses based on the date and price at which the Settlement Class Member purchased and sold Momo ADSs, in accordance with the foregoing application of the securities laws and Plaintiffs' theories of the case.

### **Complexity, Expense and Likely Duration of the Litigation**

26.    Over the course of this litigation, Plaintiffs, through Lead Counsel: (1) investigated the claims in this action to plead a detailed amended complaint, which required hiring private investigators in China to locate and conduct interviews with former Momo employees and relevant third parties, consulting with an accounting expert concerning Momo's financial disclosures and relevant accounting rules and standards as to related party transactions, obtaining non-public records that Momo and its relevant subsidiaries filed with Chinese regulators, and scouring public sources (including Chinese media) for material relevant to Plaintiffs' claims; (2) consulted with loss causation and damages experts; (3) effectuated service on Tang and Zhang in China through the Hague Service Convention; (4) analyzed Defendants' motion to dismiss and researched the applicable law; (5) drafted an opposition to Defendants' motion to dismiss; (6) prepared a detailed mediation statement and analyzed Defendants' mediation submissions; (7) attended a full-day mediation before Mr. Melnick and continued negotiations following the mediation; (8) documented the Settlement and filed a motion for preliminary approval; and (9) overseeing the implementation of the notice process and supervising the Claims Administrator's work. Thus, before entering into the Settlement, Lead Counsel and Plaintiffs had a thorough understanding of the strengths and weaknesses of their case.

7

27.    Without a Settlement, Plaintiffs face protracted and expensive litigation – with unique discovery challenges – that could drag the Action on for years.

28.    Even if Plaintiffs defeat Defendants' motion to dismiss (which, as discussed below, is by no means guaranteed), discovery would be highly complicated and impose substantial costs. Here, Momo is a China-based company and Tang and Zhang are both Chinese nationals residing in China. As such, most – if not all – of the evidence are in China. Plaintiffs would need to overcome Defendants' inevitable arguments that certain documents are not available for production due to China's stringent "State Secrecy" laws. Even if Plaintiffs manage to obtain documents, the vast majority of them are likely to be in Chinese, which would require Plaintiffs to translate them as well as hire bilingual staff attorneys to review them. Deposition of Chinese nationals would be difficult, as Plaintiffs would need to travel to Hong Kong to take depositions (China does not allow depositions on the Mainland), or if such is not possible due to COVID travel restricts, seek the Chinese government's permission to conduct video depositions of Chinese nationals in China. The Chinese government is unlikely to grant such a request. Third parties with relevant knowledge and/or documents are also likely to be located in China, and Plaintiffs would need letters rogatory to obtain evidence from relevant third parties. All this makes discovery especially protracted and complicated.

29.    Following discovery, Defendants are likely to file motions for summary judgment. If Plaintiffs defeat summary judgment, trial would be next, and whoever loses at trial would almost certainly appeal.  This process could take years to play out.

30.    Moreover, experts would be needed to opine on, at minimum, related party accounting rules, market efficiency, loss causation, and damages, adding substantially to Plaintiffs' litigation costs.

31. Indeed, securities class actions are inherently complex and expensive to litigate, and this one is even more so because of the unique challenges presented by China-based Defendants.

**Risks of Continued Litigation**

32. The Settlement provides an immediate and certain benefit to the Settlement Class in the form of a cash payment of $5,000,000. As explained below, this case presents significant and unique risks such that Plaintiffs and the Settlement Class might recover nothing at all – or substantially less than the Settlement Amount – if the case proceeded through additional layers of litigation to a verdict.

33. At the time the Settlement was reached, Defendants' motion to dismiss was pending. The PSLRA imposes heightened pleading standards for securities fraud cases. Having reviewed and researched Defendants' motion to dismiss, Plaintiffs were cognizant of the very real and substantial risk that the Complaint may be dismissed.

34. For example, with regards to the Content Moderation Claim, Defendants argued that Momo's annual reports contain numerous warnings that its content control efforts may not be effective in identifying all illegal content; thus, no reasonable investor would have expected Momo's content moderation tools to be 100% effective, and no reasonable investor would have been surprised that illegal content exists on Momo's apps. As to the Undisclosed Related Party Transactions Claims, Defendants argued that the Complaint failed to show that Momo had actual control or substantial influence over Beijing Mushang, or that there were even any material transactions between Momo and Beijing Mushang that required disclosure.

35. To prevail over Defendants' motion to dismiss, Plaintiffs must plead also facts supporting a compelling inference that Defendants acted with scienter. In their motion to dismiss,

Defendants argued that the insider stock sales – which Plaintiffs cite as supporting an inference of scienter - were actually pursuant to pre-existing Rule 10b5-1 plans and thus cannot be deemed as suspicious. Moreover, Defendants point out that Momo did disclose related party transactions with other talent agencies, and that the Complaint provided no explanation for why Momo would disclose related party transactions with other talent agencies but omit similar transactions with Beijing Mushang; Defendants assert that the more compelling inference is that Momo did not believe Beijing Mushang qualified as a related party under its interpretation of relevant accounting rules.

36.    Even if the Complaint survives Defendants' motion to dismiss, Plaintiff face the risk that they may lose on summary judgment. Defendants are all based in China. Most, if not all, of the evidence needed to prove Plaintiffs' claims are in China, where it is notoriously difficult to conduct discovery. Accordingly, there is no guarantee that Plaintiffs would have been able to obtain the necessary evidence to prove their case through summary judgment, much less through trial. If the Court were to grant Defendants' motion for summary judgment, then Plaintiffs would have spent years, thousands of attorney hours, hundreds of thousands of dollars (if not more) in costs, and much judicial resources, and still get nothing.

37.    Further, proving damages in a securities case is always difficult and invariably requires intricate expert testimony. Disentangling the market's reaction to various pieces of news is a complicated concept. Defendants would oppose any expert Plaintiffs retained with an equally well-credentialed expert expressing the opposite view, and it is impossible to predict how a jury would react to this battle of experts.

38.    Establishing damages in this case would be particularly difficult. Defendants have argued that Momo did not invest into Beijing Mushang until well into the Class Period, so that

even if Beijing Mushang was a related party, Momo had no duty to disclose it until April 2018, when it filed its Form 20-F annual report for 2017.  This would make the Class Period for the Undisclosed Related Party Transactions Claim at most two months long, and because of how Momo's share price moved during the 90-days subsequent to the end of the Class Period, the actual damages – taking into account the PSLRA's 90-day bounce back rule – are negligible .  Defendants made similar arguments against damages for the Content Moderation Claim, asserting that the alleged corrective disclosure only reported that there were a handful of illegal posts on Momo's apps in April 2019, thus the Class Period for that claim could only start in April 2019 and end in May 2019 when Momo disclosed that it was undergoing "self-inspection" regarding its content moderation problems.  With a Class Period of less than a month, and in light of the price movement of Momo's shares during the PSLRA's 90-day lookback period, the damages for the Content Moderation Claim are also insignificant at best.

39.     If at any of these stages the Court or jury found Plaintiffs' damages expert and theory legally or factually insufficient, Plaintiffs would have spent much more time and money to end up with less than the $5,000,000 recovery provided under the Settlement today, or even no recovery.

40.     Had the Parties continued to litigate this Action, in addition to engaging in discovery, Plaintiffs would have had to move for class certification. This motion would be expensive and time-consuming, requiring Plaintiffs to produce documents, sit for depositions, and engage an expert to demonstrate that Momo's shares traded on an efficient market and that there was a common methodology to calculate damages for the Settlement Class. Class certification is typically vigorously opposed by defendants in securities class actions.

41.     Even if Plaintiffs defeat Defendant's motion to dismiss, complete discovery, obtain class certification, prevail over Defendants' motion for summary judgment, and win at trial, Plaintiffs face risks collecting on their judgment. Defendants' assets are primarily in China. Chinese courts do not recognize U.S. judgments. Thus, even if Plaintiffs continue litigating for years and are successful at trial, they may be left with a judgment that cannot be enforced (by then, Momo's eroding Directors & Officers insurance policy, which had been funding the defense of this lawsuit, would have long been depleted).

### The Settlement Resulted From Arm's-Length Negotiation Between Experienced Counsel

42.     Lead Counsel have extensive experience and a long track record of success litigating securities class actions in courts throughout the country, including in the Southern District of New York. *See* Ex. 5, Rosen Law Firm Resume. Lead Counsel has particular expertise litigating complex securities class actions against Chinese issuers like Momo; the settlement that Lead Counsel achieved against Alibaba Group remains the largest-ever securities class action settlement against a Chinese company. *Christine Asia Co. Ltd. et al, v. Jack Yun Ma, et al.,* 1:15-md-02631-CM-SDA (S.D.N.Y.).

43.     Defendants were represented by very capable counsel at Skadden, Arps, Slate, Meagher & Flom LLP, one of the largest and most prominent law firms in the world with considerable success and experience defending securities class actions.

### Lead Counsel's Fee Request is Justified

44.     Lead Counsel has worked diligently to achieve the Settlement, expending 714.75 hours for a lodestar value of $512,162.25. Ex. 2, Rosen Fee Decl. ¶3. The lodestar multiplier for the requested fee is 3.25. The rates Lead Counsel billed for their attorneys are comparable to peer

plaintiff and defense firms litigating matters of similar magnitude. *See* Ex. 6, Peer Firms Billing Rates.

45.     Lead Counsel spent a total of $48,049.04 in unreimbursed expenses in connection with the prosecution of this Action, considerably less than the $65,000 amount described in the Long Notice, Postcard Notice, and the Summary Notice of Pendency and Proposed Class Action Settlement. Ex. 2, Rosen Fee Decl. ¶5. Lead Counsel has received no compensation from this case during the litigation.

46.     From the outset, Lead Counsel understood it were embarking on a complex, expensive, and likely lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Lead Counsel ensured that sufficient resources were dedicated to the action and that funds were available to compensate staff and to cover the expenses the case would require. With an average lag time of several years for a case like this to conclude, the financial burden on Lead Counsel was greater than those for a firm paid on an ongoing basis.

47.     The hourly rates Lead Counsel used to arrive at its lodestar calculation are the firms' current, customary rates. Ex. 2, Rosen Fee Decl. ¶3.

48.     Lead Counsel's work will not end with the filing of the instant Motions or the Court's approval of the Settlement. Lead Counsel will spend more time and resources drafting and filing the replies in support of its Motions, preparing for and appearing at the Settlement Fairness Hearing scheduled for July 29, 2021, assisting Settlement Class Members with their Claim Forms, overseeing the claims process and distribution of the Settlement Fund to Settlement Class Members, and responding to Settlement Class Members' inquiries.

**The Requested Award to Plaintiffs is Justified**

49.     For approximately two years, Plaintiffs have spent time leading this action on behalf of the Settlement Class. Plaintiffs request an amount of $15,000 (comprised of $10,000 to Lead Plaintiff Richard Rupp and $5,000 to Named Plaintiff Rodrigo Leal) to compensate them for this time and as an incentive for representative plaintiffs to come forward in cases in the future.

50.     Plaintiffs have devoted a substantial amount time to this case, including time monitoring news on Momo, reviewing all significant pleadings and other key litigation materials filed in this Action, and communicating and corresponding with Lead Counsel throughout the pendency of the Action regarding the litigation and settlement. *See* Ex. 3, Rupp Decl.; Ex. 4, Leal Decl.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of July, 2021, in New York, NY.

*/s/  Laurence Rosen*
Laurence Rosen

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of July, 2021, a true and correct copy of the foregoing **DECLARATION OF LAURENCE ROSEN** was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Laurence Rosen*
Laurence Rosen