L841RUPC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

RICHARD RUPP, RODRIGO LEAL,
individually and on behalf of
all others similarly situated,

                    Plaintiffs,

          v.                          19 Civ. 4433 (GBD)

MOMO INC., YAN TANG, JONATHAN
XIAOSONG ZHANG,

                    Defendants.            Conference
------------------------------x

                                      New York, N.Y.
                                      August 4, 2021
                                      1:02 p.m.

Before:

                    HON. GEORGE B. DANIELS,

                                      District Judge

                         APPEARANCES

THE ROSEN LAW FIRM, P.A.
     Attorneys for Plaintiffs
BY:  LAURENCE M. ROSEN, ESQ.
     YU SHI, ESQ.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
     Attorneys for Defendants
BY:  ROBERT A. FUMERTON, ESQ.
     MICHAEL C. GRIFFIN, ESQ.

L841RUPC

(Case called)

THE LAW CLERK:  Will the parties please rise and make their appearances, beginning with the plaintiff.

MR. ROSEN:  Good afternoon, your Honor.  Laurence Rosen on behalf of plaintiff and the class.

THE COURT:  Good afternoon, Mr. Rosen.

MR. SHI:  Good afternoon, your Honor.  Yu Shi for the plaintiff.

THE COURT:  Good afternoon, Mr. Shi.

MR. FUMERTON:  Good afternoon, your Honor.  Robert Fumerton and Michael Griffin from Skadden Arps for the defendants.

THE COURT:  Good afternoon, gentlemen.

MR. FUMERTON:  Good afternoon.

THE COURT:  I guess, Mr. Rosen, Mr. Shi, let me start with you.  Where are you at this point and are we ready to move forward?

MR. ROSEN:  Well, your Honor, I think that we're ready to move forward.  The notice was successfully disseminated to everybody.  There have been close to 300,000 notices mailed and emailed.  Actually, 299,000 precisely -- well, not precisely, but more precisely, and there have been no objections; there have been five requests for exclusion, none of which meet the requirements for exclusion that we believe are valid.  One of them is a small amount of money.  It's like $350.  An

L841RUPC

individual requested exclusion, but he -- he was an in-and-out purchaser so he didn't have any compensable damages.  And then there were four other exclusions who didn't provide any information as to having purchased the shares, when they purchased or what they purchased.  So no exclusions of note besides those.

THE COURT:  Have you communicated with these individuals or you just received their communication?

MR. ROSEN:  Well, your Honor, so there was a back-and-forth between the claims administrator and the individuals in which the claims administrator said, if you want to get excluded, you have to give us some information as to the number of shares that you purchased and show us that, you know -- show us some evidence that you're a class member.  And none of them complied with that request, so, you know, I don't think it's really significant, because whether they're in or out has no bearing on the case, I think, the settlement, in any respect, because they don't have any appreciable shares, they're not going to be filing a lawsuit of their own, and it's just sort of a perfunctory exercise in rejecting them as optouts.

THE COURT:  Okay.  Because I was trying to understand what you think that they were attempting to accomplish and how they wanted to proceed.

MR. ROSEN:  I think that, you know -- we sent, again,

L841RUPC

to about 300,000 people and we got 32,000 claims submitted, approximately, of which 6475 were valid, that had compensable losses.  So when you mail to 300,000 people, you're going to have a couple of people who just sort of don't want to be part of it, or they're afraid they're going to get charged a fee, or they just don't feel comfortable being a part of a lawsuit so they just say, I don't want any part of it, so that's what I think that is, more than anything else.

THE COURT:  So you believe it's appropriate to go ahead and the Court to give final approval to the settlement and I guess issue a separate order with regard to fees.

MR. ROSEN:  Yes, your Honor.  I mean, I can run through the requirements for final approval.  If you'd like, I can make a record as to the *Grinnell* factors on final approval, if that's helpful.

THE COURT:  You can do that briefly, sure.

MR. ROSEN:  Okay.  Thank you, your Honor.

So final approval requires that the settlement be fair, adequate, and reasonable, and not the product of collusion, and the Court has discretion to approve the settlement.

So the *Grinnell* factors -- so this case concerned an issuer based in the People's Republic of China, and they went public in the United States, traded on the US stock exchange, and these are Section 10(b) claims arising from what were

L841RUPC

false -- allegedly false and misleading statements.  Now we did quite a bit of investigation, and we filed an amended complaint.  Defendants filed a motion to dismiss; we opposed the motion to dismiss; they completed the briefing with the reply.  And then at some point we went to a mediation.  We went to a mediator named Mr. Jed Melnick, who is a very experienced mediator at JAMS, who specializes in securities class actions, particularly the ones for Chinese issuers.  And we were unable to settle it at the initial mediation, but over a course of weeks of additional negotiations, we ultimately came to an agreement to settle it for $5 million in cash.  And that is a very good result.

And under the *Grinnell* factors, the first one is complexity, expense, and likely duration of the litigation.  So this being a PRC company, the costs and time required to litigate are much higher because everything's got to get translated; doing things in China requires additional expense and complexity, and that's on top of an already complex securities class action, which, you know, is -- so taking an already complex case and making it more expensive and more complex.  So this gives us an immediate result that -- certain immediate cash result for the class.

As far as the reaction of the class to the settlement, there's no objection.  There are only the five optouts that have, you know -- one guy had $350 worth of stock, the other

L841RUPC

guys -- they either don't know or didn't provide any numbers as to how much stock they had.  So the reaction of the class has been generally very positive, given that there's 300,000 people receiving notices and not a single objection.

The risk of establishing liability in these securities class actions, there's always quite a bit of risk.  You know, there's the risks on the motion to dismiss, there's a risk on class certification, summary judgment.  So there's always, you know -- this eliminates that risk, the risk of establishing damages, and the risk of maintaining class action status through trial, which in recent years has become more and more complex.  There's now been a recent Supreme Court case based on a Second Circuit decision in *Goldman Sachs*.  So that really, you know, takes that risk off the table, the ability of the defendants to withstand a greater judgment.  So given this issuer is based in China, it's very hard to enforce a judgment there, so this eliminates that risk.

And the range of reasonableness of the settlement in light of the best possible recovery.  I think this settlement, the $5 million, gives us a percentage recovery that is on a par with other class actions of this nature.

So for those reasons, we think the settlement is fair, reasonable, and adequate, and we've litigated probably six dozen of these cases against Chinese issuers, and I think this is a fair result, based on what the market value of these

L841RUPC

claims are.

So your Honor, the next issue is the plan of allocation, which this is the standard plan of allocation that our expert put together, which basically distributes the settlement proceeds pro rata to all the shareholders based on the number of shares they purchased during the class period and held on the corrective disclosure, when the stock price dropped, so they get that stock price drop on that corrective disclosure -- for every share they held, they get a pro rata portion of the settlement proceeds.  And that's pretty much the standard for the plan of allocation.

So for those reasons, we think the settlement and the plan of allocation is fair, reasonable, and adequate and request that the Court approve it.

THE COURT:  All right.  Mr. Fumerton, did you want to add anything at this point?

MR. FUMERTON:  No, your Honor.  Robert Fumerton for defendants.  Your Honor, we agree with Mr. Rosen's statements concerning the fairness and reasonableness of the settlement.  As your Honor is aware, we're contractually prohibited from commenting on the plan of allocation or attorney's fees.

THE COURT:  All right.  Then I've reviewed the settlement agreement and its terms.  I will give final approval.  I find that the settlement here is fair, reasonable, and adequate for the class.  I will therefore issue the order

L841RUPC

and final judgment as proposed by the parties.

I also find that the attorney's fees and expenses and individual awards for named plaintiffs are appropriate and fair, reasonable, and adequate also to the client, so I will also issue the proposed order awarding attorney's fees and the reimbursement of expenses and awards to the named plaintiffs.

I filled in the blanks. I'll just take a look at it before we file it to make sure that the numbers haven't changed. I think we have the appropriate numbers as proposed. And I will otherwise have this filed today and you can move forward with distribution.

So is there anything else that we need to address?

MR. ROSEN: No, your Honor. As far as the distribution, I think the claims administrator will need several months to tally up the final claims. Sometimes there's late claims.

THE COURT: Sure.

MR. ROSEN: And in a few months, maybe five months, we'll file a motion for distribution and we'll be able to close that out.

THE COURT: All right. That's great.

All right. Well, thank you very much, gentlemen.

MR. ROSEN: Thank you, your Honor.

MR. FUMERTON: Thank you, your Honor.

oOo